IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY A. VERA, | : | CIVIL ACTION NO. **3:CV-04-1879** |
| Plaintiff | : | (Judge Caputo) |
| v. | : | (Magistrate Judge Blewitt) |
| JOANNE B. BARNHART, Commissioner of Social Security, | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

This is a Social Security disability case pursuant to 42 U.S.C. § 405(g), wherein the Plaintiff, Larry A. Vera, is seeking review of the decision of the Commissioner of Social Security ("Commissioner") which denied his claim for Social Security Disability Insurance Benefits ("DIB") Titles II of the Social Security Act (Act), 42 U.S.C. §§ 401-433.

**I. PROCEDURAL HISTORY.**

The Plaintiff filed an application for DIB on May 31, 2002, alleging an inability to work since March 27, 2002, due to diabetes, coronary artery disease, and uncontrolled hypertension. ( R. 38A-38B, 39A). His claim was denied initially, and a timely request for a hearing was filed. ( R. 16, 31-35). A hearing was conducted on August 12, 2003, before an Administrative Law Judge. The Plaintiff was denied DIB pursuant to the Administrative Law Judge's decision of September 18, 2003. ( R. 13-22).

Plaintiff sought review of the Administrative Law Judge's October 7, 2003, decision by the Appeals Council. (R. 11). Said request was denied on June 30, 2004. (R. 5-7). Thus, the Administrative Law Judge's decision of September 18, 2003, became the "final decision" of the Commissioner. That decision is the subject of this appeal.

The relevant time period of this case for the DIB application is March 27, 2002 (the alleged onset date (R. 16, 39)), through September 18, 2003 (the date of the final decision (R. 16-21)).

In compliance with the Procedural Order issued in this matter, the parties have filed briefs in support of their respective positions. (Docs. 9, 10 and 11).

## II. STANDARD OF REVIEW.

When reviewing the denial of Social Security benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  (*See also* R. 14).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

## III.  ELIGIBILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits.  *See* 20 C.F.R. § 404.1520 (1990).  *See also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  20 C.F.R. §§ 404.1520.

The first step of the process requires the Plaintiff to establish that he has not engaged in "substantial gainful activity."  *See* C.F.R. §§ 404.1520(b), 416.920(b). The second step involves an evaluation of whether the Plaintiff has a severe impairment.  *See* 20 C.F.R. §§ 404.1520(c). The Commissioner must then determine whether the Plaintiff's impairment or combination of impairments meets or equals those listed in Appendix 1, Subpart P, Regulations No. 4.

If it is determined that the Plaintiff's impairment does not meet or equal a listed impairment, the Commissioner must continue with the sequential evaluation process and consider

whether the Plaintiff establishes that he is unable to perform his past relevant work. *See* 20 C.F.R. § 404.1520(e), 416.920(e). The Plaintiff bears the burden of demonstrating an inability to return to his past relevant work. *Plummer*, 186 F.3d at 428. Then the burden of proceeding shifts to the Commissioner to demonstrate that other jobs exist in significant numbers in the national economy that the Plaintiff is able to perform, consistent with his medically determinable impairments, functional limitations, age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). This is step five, and at this step, the Commissioner is to consider the Plaintiff's stated vocational factors. *Id*.

The Administrative Law Judge proceeded through each step of the sequential evaluation process and concluded that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 21-22). In reaching this determination, the Administrative Law Judge found that Plaintiff met the nondisability requirements for DIB of the Social Security Act through the date of his decision. (R.17). He next determined that the Plaintiff had not engaged in substantial gainful work activity since the alleged onset date (March 27, 2002). (R. 21). The ALJ also found that Plaintiff's coronary artery disease, hypertension and diabetes were severe within the meaning of the Regulations but not severe enough, either singly or in combination, to meet or equal the criteria for establishing disability under the listed impairments as set forth in Appendix 1, Subpart P, Regulations No. 4. (R. 16, 21).

The Administrative Law Judge found Plaintiff's allegations regarding his limitations to be not totally credible. (R. 19, 22). When assessing his residual functional capacity ("RFC"), the Administrative Law Judge found that Plaintiff retained the following residual functional capacity: he

can perform work at the sedentary exertional level with restrictions[1] (not a full range of sedentary) in which he can lift and carry ten pounds occasionally and five pounds frequently; stand and walk for two out of eight hours; sit for six out of eight hours; can never push or pull, climb, kneel or crawl; can occasionally balance, stoop, crouch and reach; must avoid temperature extremes, wetness, humidity, hazards, dust, fumes, odors and poor ventilation and requires a low-stress job. (R. 19, 22).  The Administrative Law Judge concluded that Plaintiff was unable to perform any of his past relevant (unskilled to semi-skilled, light to medium) work. (R. 20, 22).  In addition, the Administrative Law Judge found that Plaintiff has no transferable skills.  Thus, the Administrative Law Judge found that the Plaintiff met his burden in Step Four, and the inquiry moved to Step Five.

As discussed above, at Step Five, the Commissioner had the burden of demonstrating that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(f). The final and fifth step requires an analysis of whether the Plaintiff, based on his age, experience, education, and residual functional capacity and limitations, can perform any other work in the national economy.  *See Plummer v. Apfel*, 186 F.3d at 428; *Burnett v. Comm. of SSA*, 220 F.3d 112, 126 (3d Cir. 2000).  Thus, at this step, the Commissioner must demonstrate that Plaintiff is capable of performing other available work in order to deny a

---

[1] (a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

 20 C.F.R. §404.1567 (a).  ( R. 18).

claim of disability. 20 C.F.R. § 404.1520(f); *Plummer*, 186 F.3d at 428. In making a disability determination, the ALJ must analyze the cumulative effect of all of the Plaintiff's impairments. 20 C.F.R. § 404.1523; *Plummer, supra*. Based on the testimony of an impartial vocational expert, the Administrative Law Judge concluded that, considering the Plaintiff's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work which exists in significant numbers in the national economy. ( R. 21, 22). Specifically, the vocational expert testified that a hypothetical individual with Plaintiff's background and restrictions could work as a hand assembler (3000 jobs regionally), a hand packer (2000 jobs regionally), an inspector (3000 jobs regionally), a print shop worker (2500 jobs regionally), and a security system monitor/gate guard (2500 jobs regionally). (R. 21, 22). Thus, Plaintiff was found to be not disabled. (R. 22).

## IV. DISCUSSION.

### *A. Background*

The Plaintiff was born on July 16, 1958, and was 45 years old at the time of the hearing before the Administrative Law Judge (ALJ) on August 12, 2003. (R. 20). Plaintiff is a younger person under the regulations. (R. 22). *See* 20 C.F.R. § 404.1563. Plaintiff has more than a high school education. (R. 22). *See* 20 C.F.R. § 404.1564. Transferability of skills is not an issue in this case. (R. 22). *See* 20 C.F.R. § 404. 1568. Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability. (R. 21). The ALJ also found that the Plaintiff was unable to perform any of his past relevant work. (R. 22).

In his application for DIB filed on April 18, 2002, Plaintiff alleged that he became disabled on March 27, 2002, and ceased working due to breathing problems, chest pain, uncontrolled hypertension, and type II diabetes. (R. 39).  The ALJ found that Plaintiff had physical impairments of coronary artery disease, hypertension, and diabetes, which were severe.  (R. 17).

The ALJ found that Plaintiff had an impairment or a "combination" of impairments which were severe impairments. (R. 17, 21).  However, the ALJ found that the Plaintiff did not have any physical impairments or combination thereof which met or medically equaled any listed impairment. (R. 21).  Specifically, the ALJ considered the criteria of Listing 4.04 (Ischemic Heart Disease) with respect to Plaintiff's cardiac impairment.  (R. 17).

The ALJ found that the Plaintiff retained the residual functional capacity ("RFC") to perform work at a sedentary exertional level with restrictions, as stated above. (R. 19).  Finding that a significant number of such jobs exist in the national economy which the Plaintiff could perform, based on the testimony of a vocational expert, as mentioned above, the ALJ held that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. 22).

The Plaintiff maintains on appeal that the ALJ's decision is not supported by substantial evidence in that: (1) the ALJ's determination concerning Plaintiff's residual functional capacity lacks the support of substantial evidence; and  (2) the ALJ failed to properly evaluate Plaintiff's testimony. (Doc. 19, pp. 12-16).   These arguments will be addressed below.

### *B. Medical Evidence*

The medical evidence indicates, and there is no dispute, that Plaintiff has coronary artery disease, hypertension, and diabetes.  (R. 17).  There is also no dispute that Plaintiff has suffered

multiple myocardial infarctions since 1999 and has been hospitalized on several occasions due to chest pain.  The ALJ found that the Plaintiff did have the stated impairments, that they were severe, but that they did not meet the listed impairments provided in the regulations.  (R. 21).  The ALJ found that medical evidence showed that Plaintiff could perform sedentary work with restrictions, and the Plaintiff contests this finding of the ALJ. (R. 16, 21).[2]

### *C. RFC Assessment and Medical Source Opinions*

On October 23, 2002, a non-examining State agency consultant's residual functional capacity assessment found that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours in an eight-hour work day, sit for six hours in an eight-hour work day, and had unlimited ability to push and pull.  (R. 193-98).  The consultant did not find any limitations.  *Id*.  The consultant's explanation of his findings were illegible.  *Id*.

On March 4, 2003, Dr. Figueroa, Plaintiff's treating Internist, completed a "Multiple Impairment Questionnaire."  (R. 384-91).  The questionnaire stated that Plaintiff's fatigue and pain were an eight, based on a scale of ten; and that Plaintiff could sit for one hour a day, stand for less than one hour a day, lift/carry five pounds occasionally, and could not lift/carry any weight on a frequent basis.  (R. 386-86).  Dr. Figueroa also indicated that Plaintiff had other limitations, including psychological and environmental, such as that he should avoid wetness, noise, fumes, gases, temperature extremes, humidity, dust, and heights.  Dr. Figueroa further found that Plaintiff should not push, pull, kneel, bend or stoop.  (R. 390).  Dr. Figueroa based his evaluation on

---

[2]We note that the Plaintiff has the burden of proving that he meets all of the requirements for a listing.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

abnormal echocardiogram, abnormal left cardiac catheterization, and abnormal lab reports. (R. 384).

On March 12, 2003, Dr. Daily-Sterling, Plaintiff's treating Cardiologist, completed a "Cardiac Impairment Questionnaire." (R. 392-96). The questionnaire stated that Plaintiff could sit for one hour a day, stand for less than one hour a day, lift up to ten pounds occasionally, carry five pounds occasionally, and could not lift/carry any weight on a frequent basis. (R. 394-95). Dr. Dailey-Sterling found the same limitations for Plaintiff that Dr. Figueroa listed. (R. 396). Dr. Daily-Sterling based his evaluation on materials that were attached to his questionnaire. (R. 394). However, this Court is unsure as to the reports to which the questionnaire refers.

On May 26, 2003, the ALJ asked Dr. Decker to provide his opinion of Plaintiff's disability claim based on the evidence in the record. (R. 397-98). Dr. Decker opined that Plaintiff could stand at least two hours in an eight-hour day, sit about six hours in an eight-hour day, lift/carry ten pounds occasionally, could not lift any weight on a frequent basis, and was limited in his ability to push and pull. (R. 399-400). Dr. Decker also stated that Plaintiff had postural limitations and Plaintiff should never climb, kneel, crouch, or crawl, but could occasionally balance and stoop. (R. 400). Plaintiff's environmental limitations included temperature extremes, dust, humidity/wetness, fumes, odors, chemicals, and gases. (R. 402).

On February 25, 2004, Dr. Ronald Weissman, a Cardiologist, completed a "Cardiac Impairment Questionnaire"[3] at the request of Plaintiff's representative. (R. 467-71). The

---

[3] It is noted that this evaluation is outside of the applicable date; however, this questionnaire provides further consistent evidence of Plaintiff's limitations.

questionnaire stated that Plaintiff could sit for one to two hours a day, stand for less than one hour a day, occasionally lift/carry up to twenty pounds, and could not push, pull, kneel, bend or stoop. (R. 469-71). Dr. Weissman based his opinion on "multiple cardiac catheterizations demonstrating progressive coronary artery disease" and "abnormal stress nuclear tests showing ischemia and infarction." (R. 468).

### D. Analysis

Plaintiff contends that the ALJ's finding with respect to Plaintiff's residual functional capacity lacks substantial evidence. (Doc. 9, p. 12). Plaintiff also argues that the ALJ did not fully explain why he did not afford significant weight to the opinions of Plaintiff's treating physicians. Plaintiff states that the ALJ's claims that the treating physician's opinions are "not consistent with, or supported by the medical evidence" do not satisfy the requirement that "we will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion." (Doc. 9, p. 14)(citing 20 C.F.R. § 404.1527(d)(2)). Furthermore, Plaintiff notes that, had the vocational expert used the limitations provided by Plaintiff's treating physician, there would not be any job within Plaintiff's ability. (Doc. 9, p. 15). We agree.

As the Defendant states in her Brief, the Commissioner has the responsibility for determining the residual functional capacity of a claimant, and special significance will not be given to the source of an opinion reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(2),(3), 20 C.F.R. § 404.1546(c), (Doc. 10, p.8-9). While this may be true, the ALJ must follow the guidelines provided by the Regulations in determining the weight given to a medical source opinion. *See* 20 C.F.R. § 404.1527. The ALJ is to make a decision on the case based on the evidence presented,

including medical opinions.  20 C.F.R. § 404.1527(b).  If the medical evidence contains inconsistencies, the evidence will be weighed to determine if the ALJ is able to make a disability assessment.  20 C.F.R. § 404.1527(c)(2).  It is clear that this case contains inconsistencies, as the ALJ states himself "I do not accord [the treating physicians'] opinions any significant weight as they are not consistent with, or supported by, the medical evidence of record."  (R. 18).

In finding that an inconsistency exists, the ALJ should weigh the opinions, regardless of the source.  20 C.F.R. § 404.1527(d).  In weighing the opinions of medical sources, 20 C.F.R. § 404.1527(d) provides "[g]enerally we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."  20 C.F.R. § 404.1527(d)(1).  Furthermore, "[g]enerally we give more weight to opinions from your treating sources," and these opinions are given controlling weight if they are not inconsistent with other substantial evidence.  20 C.F.R. § 404.1527(d)(2).  However, if a treating source is not afforded controlling weight, the following factors are applied to determine the weight given to the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship (the more knowledge a treating source has about your impairment the greater the weight the opinion is afforded); (3) supportabiltiy (the more medical evidence that is provided the more weight the opinion is given); (4) consistency (the more consistent the opinion is with the record as a whole); (5) specialization (opinions of a specialist related to his or her area of speciality are generally afforded more weight); and (6) other factors.  20 C.F.R. § 404.1527(d)(i)-(ii), (d)(3)-(d)(6). After making a weight determination, the ALJ is required to "give good reason[]

in [his] notice of determination or decision for the weight [] give[n] your treating source's opinion."

20 C.F.R. § 404.1527(d).

The Third Circuit addressed the standard for evaluating the opinion of a treating physician in *Morales v. Apfel*, 225 F.3d 310 (3rd Cir. 2000). The court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones,* 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Brewster,* 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id*. at 317-318.

In addition, the Third Circuit established that the ALJ's finding of residual functional capacity "must be accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli v. Massanari,* 347 F.3d 34, 41(3d Cir. 2001)(quoting *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981). The court in *Cotter* provided a standard for a hearing examiner's opinion:

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement

> of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

642 F.2d at 704.

The ALJ erred for the following reasons: (1) he did not follow the regulations or standard in evaluating the weight given to Plaintiff's treating physicians' opinions; and (2) he did not "give good reason" or supply a factual statement that would allow a reviewing court to know the basis for rejecting Plaintiff's treating physicians' opinions.

The ALJ's decision describes Plaintiff's multiple myocardial infractions and emergency room visits since 1999. (R. 18). He also states Plaintiff's diagnosis based on examinations from his treating doctors (Dr. Silberman, Dr. Dailey-Sterling and Dr. Figueroa) and elaborates on their findings relating to Plaintiff's physical abilities. *Id*. The ALJ then summarily states: "I do not accord these opinions any significant weight" because the record does not support that Plaintiff is able to sit or stand for less than one hour in an eight-hour day. *Id*. The ALJ appears to justify this statement based on the medical opinion of Dr. Decker (a non-examining, non-treating physician) which states, as mentioned above, that Plaintiff is able to sit for six hours and stand for at least two hours in an eight-hour day. (R. 19).

The opinions of Dr. Daily-Sterling and Dr. Figueroa are opinions of treating physicians. Furthermore, Dr. Daily-Sterling is a cardiologist and specializes in treating patients, such as Plaintiff, who suffer from cardiac ailments, like coronary artery disease. As discussed above, these opinions

are given controlling weight unless they are inconsistent with the record. Here, the ALJ did not afford significant weight to the opinions of Plaintiff's treating doctors because he believed, based on medical evidence, that Plaintiff is able to sit and stand for more than one hour in an eight-hour day. However, discrediting the opinion of a treating physician involves more than a mere statement of disagreement on how long a Plaintiff is able to sit or stand. The ALJ did not discuss any of the six factors listed in the regulations or any of the medical evidence that supports or fails to support Plaintiff's treating doctors' opinions.

Upon review of the factors listed above, the ALJ should have given the opinions of Plaintiff's treating doctors more weight, or he should have throughly explained the reasons why such weight was not afforded. The record contains hundreds of pages of medical evidence addressing all of the factors. Specifically, the record contains Plaintiff's relationship with the doctors (*i.e.,* length and frequency of treatment, (R. 41, 384, 392), the doctor's knowledge of Plaintiff's impairments, (R. 117-36, 140-54, 290, 360-78), and Dr. Daily-Sterling's specialization as a Cardiologist. (R. 418). At minimum, the ALJ should have pointed to specific disqualifying medical evidence to justify his apportionment of credibility.

As noted above, the Commissioner's decisions are reviewed on a substantial evidence standard, and an ALJ's assessment of the evidence is entitled to substantial deference. However, "a single piece of evidence will not satisfy the substantiality test of the Secretary ignores, or fails to resolve, a conflict created by a countervailing evidence." *Dorf v. Bowen,* 794 F.2d 896, 901 (3d cir. 1986). Presently, the ALJ "takes into consideration" the opinion of Dr. Decker in making his RFC assessment because it is consistent with the record as whole, but he fails to elaborate on how

14

it is consistent. The ALJ discredited the opinions of Plaintiff's treating physicians based on the opinion of a non-examining doctor, whom he gave credit to based on the record as a whole, a record which the ALJ did not sufficiently discuss. "The search for substantial evidence is a qualitative exercise without which our review of social security disability cases cease to be deferential and becomes instead a sham." *Calcek v. Commissioner of Social Security,* 2003 WL 21911069, (M.D. Pa. 2003)(citing *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983)). Here, the lack of explanation provided by the ALJ requires a remand.

  Finally, the ALJ's explanation for affording Dr. Decker's opinion greater weight than the opinions of Plaintiff's treating physicians lacks a comprehensive statement based on factual foundation. The ALJ's reliance on Dr. Decker's opinion is proper only when it is supported by additional evidence in the record. While this evidence may exist in the record, it was not adequately discussed in the ALJ's decision and, without such an explanation, we cannot determine if the decision is supported by substantial evidence. Furthermore, the ALJ's assessment of Plaintiff's credibility is not explained with satisfaction. Plaintiff testified at the hearing, as the ALJ acknowledged, that he has difficulty sleeping, sometimes needs help putting on his shoes and washing his hair, and does not assist in any household chores. (R. 19, 476-94). This testimony corroborates the opinions of both of Plaintiff's treating physicians which describe Plaintiff's limitations. However, the ALJ finds "claimant's testimony was not completely credible or consistent with the record as a whole." (R. 19). The ALJ make this blanket statement without explanation of how it contradicts the record as a whole or on what basis the ALJ relied. Once again, this Court will not guess as to how an ALJ drew his conclusions.

The standard of substantial evidence is not a difficult one to satisfy. However, we find that the ALJ's decision in this case does not suffice. Therefore, remand is warranted for further explanation as to the weight given to the opinions of the treating physicians and why, as well as upon what inconsistencies the ALJ based Plaintiff's credibility assessment.

**V. Recommendation**.

Based on the foregoing, it is respectfully recommended that the Plaintiff's appeal granted to the extent that this action be remanded for further consideration for the reasons discussed herein.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 18, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY A. VERA, | : | CIVIL ACTION NO. **3:CV-04-1879** |
| | : | |
| Plaintiff | : | (Judge Jones) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| JOANNE B. BARNHART, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 18, 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *Defendant novo* determination of those portions of the report or specified proposed findings or recommendations to which objection

is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

        **S/ Thomas M. Blewitt**
        **THOMAS M. BLEWITT**
        **United States Magistrate Judge**

**Dated: July 18, 2005**